```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
RALPH HALL,                                           :
                                                      :
                Petitioner,                           :
                                                      :
        -against-                                     :   REPORT AND RECOMMENDATION
                                                      :
                                                      :   10-CV-3877 (LAP) (KNF)
                                                      :
DARWIN LE CLAIRE and NORMAN BEZIO                     :
                                                      :
                Respondents.                          :
------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LORETTA A. PRESKA, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Petitioner Ralph Hall ("Hall"), who is proceeding pro se, filed an amended petition ("Amended Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for, inter alia, first-degree murder. Hall asserts the following claims: (1) the excessive delay on the part of the state court in deciding his appeal from his criminal conviction violated his right to due process and the appeal itself was "prejudiced by state delay;" (2) his conviction was obtained wrongfully because the trial court, at the time of sentencing, failed to incorporate into the trial record his pro se motion to vacate the judgment of conviction, made pursuant to New York's Criminal Procedure Law ("C.P.L.") § 330.30; (3) the grand jury proceeding was defective because his "indictment was based on incompetent evidence" given by a "witness who was not present at the time the incident occurred;" and (4) he received ineffective assistance from appellate counsel when counsel refused to raise on appeal issues previously raised in, inter alia, Hall's state habeas corpus petition, and when counsel failed to

file the brief on appeal timely.[1]  The respondents oppose the Amended Petition.

## BACKGROUND

On May 27, 2004, at approximately 8:15 p.m., Hall, who was armed, along with two other armed men, entered the Manhattan apartment of Nnandi Ben-Jochannan ("Ben-Jochannan").  Ben-Jochannan's eleven-year-old son, Nnandi Ben-Jochannan Junior ("Nnandi"), was also present in the apartment.  Hall was known to Ben-Jochannan through his girlfriend, Chandra Carston ("Carston").  Some months earlier, Carston had bought a car and Hall had registered and insured the car in his name.  Thereafter, Carston accumulated several tickets on the car, including two parking tickets.  When Hall entered Ben-Jochannan's apartment, he said that he had come for payment of the tickets.  Ben-Jochannan at first argued with Hall, protesting that the parking tickets were not his; he then produced $200 in cash, which was taken by one of Hall's accomplices.  At that point, Hall shot at Ben-Jochannan, striking him in the head, shoulder and neck.  Hall then shot at Nnandi but the bullet missed and Nnandi fell to the floor and lay still with his eyes closed, pretending to be dead.  Someone approached and put a gun to the back of Nnandi's head; Nnandi heard the trigger being pulled but there was a click and the gun did not fire.

After Hall and his accomplices left, Nnandi got up and ran out of the building and across the street to his father's store where he met Carston.  Carston left Nnandi with a friend and went to Ben-Jochannan's apartment where she found his body.  Nnandi later explained that he knew Hall as his father's friend "Ratton."  Based on information provided by Nnandi and Carston,

---

[1]The respondents interpret Hall's Amended Petition to allege, in addition to these claims, those raised on his direct appeal.  However, a review of the Amended Petition indicates that Hall's application for habeas corpus relief is based on the claims set forth above.

police personnel were able to locate and arrest Hall later the same night. The next day, Nnandi identified Hall at a lineup as the man who had killed his father.

A grand jury charged Hall with first-degree murder, attempted first-degree murder and other offenses relating to the incident at the apartment. Hall proceeded to trial. At the conclusion of the trial, the jury found Hall guilty of first-degree murder, second-degree murder, attempted first-degree murder, attempted first-degree assault, two counts of first-degree robbery, second-degree robbery, second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon. On October 7, 2005, Hall was sentenced to indeterminate prison terms having a maximum of life and a minimum of twenty-five years on each of the murder and attempted murder counts, and to a determinate prison term of fifteen years on each of the attempted first-degree assault, robbery and second-degree weapon possession counts. Hall was sentenced to a prison term of seven years on the third-degree weapon possession count.

At the start of the sentencing proceeding, Hall presented the court an affidavit in support of his motion to set aside the verdict and for a new trial, pursuant to C.P.L. § 330.30. Hall had prepared the affidavit using a preprinted form and without the assistance of an attorney. As set forth in the transcript of the sentencing proceeding, Hall's trial attorney, George Goltzer, Esq. addressed the court as follows:

> MR. GOLTZER:   Your Honor, Mr. Hall has prepared a pro se motion and has asked us to adopt it as his own. If I may, I'd like to hand it up to the court. I do not have a copy for the prosecutor, he just handed it to me now. He's raised issues which were raised at the trial and preserved for purposes of appeal. It might be easier since there are not copies for everybody, if I summarize his points for the record

3

|  |  |
|---|---|
|  | so that there is a stenographic transcript of it. |
| THE COURT: | I'm going to have copies made so that you can have a copy and the People can have a copy. |
| MR. GOLTZER: | Thank you, your Honor. |
| THE COURT: | Let's proceed. Give [prosecutor] Ms. Hobbs an opportunity, Ms. Hobbs and [prosecutor] Mr. Whitt to look it over and make a response and then they can respond. |
| MS. HOBBS: | You want me to address – well, Judge, I think this will be properly heard perhaps in a 440.10. |
| THE COURT: | You oppose the motion? |
| MS. HOBBS: | Yes, we do. |
| THE COURT: | Motion denied. |
| MR. GOLTZER: | Your Honor, before you deny the motion, Mr. Hall has indicated that there is a witness that he's just learned about and if it is a 440.10, it would require diligence on the defense so I'm going to request a short continuance of these proceedings for about a week so that I can dispatch my investigator to attempt to interview the witness referred to on page five. |
| COURT: | Do you want to be heard on that? |
| MS. HOBBS: | Your Honor, can you direct our attention to where that is? |
| MR. GOLTZER: | It's on the side of the page. |
| MS. HOBBS: | Where are you referring to? |
| MR. GOLTZER: | Paragraph nine. |

4

| | |
|---|---|
| MS. HOBBS: | I don't know what he's referring to, your Honor, I don't see, it says something about the prosecution witness mentioned her corroborating. |
| MR. GOLTZER: | He's referring to a witness named Smith. |
| MS. HOBBS: | This says nothing about who this person is. |
| THE COURT: | Counsel? |
| MS. HOBBS: | We oppose. |
| THE COURT: | Motion denied, counsel. The application for an adjournment denied. |

Thereafter, on November 6, 2006, Hall was granted leave by the New York State Supreme Court, Appellate Division, First Department, to file a direct appeal. The court also enlarged the time within which Hall was required to perfect his appeal to 120 days from the date of filing the record. Appellate counsel was appointed for Hall by order dated November 16, 2006.

On direct appeal, Hall, through his appellate counsel, argued that: (1) the identification of Hall, during the lineup conducted following his arrest, was inadmissible and should have been suppressed because the lineup was impermissibly suggestive; (2) Hall was deprived of his right to a public trial when his girlfriend was excluded from the courtroom on the basis that she might be a witness; (3) Hall was denied his due process right to a fair trial and the right to confront the witnesses against him when the court would not allow into evidence Carston's prior written statement, because the jury had already learned about the two prior inconsistencies it contained; and (4) the admission of an unredacted autopsy report at trial violated Hall's Sixth Amendment right to confrontation, because the testifying doctor was not present for the autopsy and did not

5

prepare the autopsy report on which her testimony was based. In addition, Hall filed a pro se supplemental brief, in which petitioner presented twenty claims, including issues raised by his appellate counsel, and he argued that counsel had taken too long to file the brief on appeal.

On April 21, 2011, the New York State Supreme Court, Appellate Division, First Department, determined that the admission of the autopsy report at trial did not violate the petitioner's rights under the Confrontation Clause of the Sixth Amendment, which prohibits the prosecution from introducing testimonial statements of a non-testifying witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, because, inter alia, the autopsy report could not fairly be viewed as "formalized testimonial material." People v. Hall, 84 A.D.3d 79, 81-86, 923 N.Y.S.2d 428, 430-33 (App. Div. 1st Dep't 2011). Moreover, any error in admitting the autopsy report was harmless because the evidence of the cause of death and the peititioner's guilt was overwhelming. See id. at 85, 923 N.Y.S.2d at 432-33. The Appellate Division also found that the trial court: (1) denied properly the petitioner's motion to suppress identification testimony, where the lineup photographs established that the lineup was not suggestive; and (2) exercised its discretion properly in excluding defendant's girlfriend from the courtroom on the ground that she was a potential witness. The court also found that the petitioner's other claims, including those presented in his supplemental pro se brief, were unavailing. Id. at 85-86, 923 N.Y.S.2d at 433.

On February 24, 2012, the New York Court of Appeals denied Hall's request for leave to appeal. People v. Hall, 18 N.Y.3d 924, 942 N.Y.S.2d 463 (2012). Hall's pro se petition for a writ of certiorari was denied by the United States Supreme Court on October 1, 2012. Hall v. New York, __ U.S. __, 133 S. Ct. 193 (2012).

Hall filed his first petition for a writ of habeas corpus on October 25, 2007. The petition was dismissed as premature because the petitioner's direct appeal was still pending in state court. On October 16, 2009, the Second Circuit Court of Appeals received an application from Hall for leave to file a second or successive petition. The Court of Appeals remanded the application to this court finding that it did not constitute a second or successive petition because the earlier petition had not been adjudicated on the merits. On May 11, 2010, Hall was granted leave to file an amended petition and was directed to state all the grounds he planned to pursue and whether those grounds had been exhausted in state court.

On June 3, 2010, while his direct appeal was still pending, Hall filed the Amended Petition. By order dated September 15, 2010 ("September 2010 Order") (Docket Entry No. 10), the assigned district judge at that time, the Honorable Richard Owen, denied Hall's excessive delay claim, finding that the state appellate court's delay did not violate Hall's right to due process but that Hall could re-file his excessive delay claim if his appeal had not been adjudicated by one year from the date of the order.

Thereafter, by order dated June 26, 2013 (filed on July 1, 2013) (Docket Entry No. 171), Judge Owen concluded that Hall's Amended Petition should not be summarily dismissed and directed the respondents to file an answer. On August 20, 2013, the respondents answered the petition, by filing a Memorandum of Law in Support of Answer Opposing Petition and an Opposing Declaration with exhibits. Prior to this, on August 15, 2013, Hall filed, prematurely, a reply styled a "Traverse Reply to the Answer." Thereafter, between August 28 and September 4, 2013, Hall submitted an "Additional Reply to Respondent's Answer," a "Final Reply," and a "Memorandum (to Final Reply)."

7

# DISCUSSION
## *Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08, 120 S. Ct. at 1520. "[The] relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, __ U.S.__, 134 S. Ct. 1697, 1706-07 (2014)(citation omitted). On a petition for a writ of federal habeas corpus, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

AEDPA requires a petitioner to exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). A state court adjudicates a constitutional claim on the merits when it: (a) disposes of the claim on substantive grounds; and (b) "reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). No articulation of the state court's reasoning for disposing of the claim is required, as long as a substantive ground is a basis for the disposition. See id. When a claim has not been presented to a state court for adjudication, a federal court reviewing a habeas corpus petition may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).[2]

***Application of Legal Standard***

    1.    Appellate Delay

Hall contends that his conviction was "procured in violation of constitutional safeguards . . . to include: inordinate delay in direct appeal constitut[ing] a denial of due process." Hall contends further that his direct appeal was "prejudiced by state delay and state condoning of delay."

A judgment convicting Hall was entered on October 7, 2005. On November 6, 2006, the Appellate Division, First Department, issued an order granting Hall leave to prosecute a direct appeal. Hall was appointed appellate counsel on November 16, 2006, and the record on appeal was filed on September 24, 2007. Hall's assigned appellate counsel, Kerry Elgarten, Esq. of the Legal Aid Society, perfected the appeal by filing an appellate brief in February 2010. Hall filed

---

[2] For the purposes of habeas corpus review, Hall has adequately exhausted the remedies available in state court.

his Amended Petition on June 3, 2010. In his Amended Petition, Hall stated that his direct appeal was adjourned to the September 2010 term of the court and that this delay violated his right to due process. As noted above, Judge Owen found that the delay in the petitioner's appeal in state court had not violated his constitutional right to due process but stated that if Hall's appeal was still adjourned one year from the date of the order, he could refile the claim of excessive delay and the court would review the claim at that time.[3]  See September 2010 Order at 7.

On April 21, 2011, five and one-half years after sentence was imposed and almost one year after Hall filed the Amended Petition, the Appellate Division, First Department, issued its written opinion denying all grounds for the appeal.

"[O]nce a state has provided defendants in criminal cases with the right to appeal, 'due process requires that an appeal be heard promptly.'" Elcock v. Henderson, 947 F.2d 1004, 1007 (2d Cir. 1991) (quoting Mathis v. Hood, 937 F.2d 790, 794 (2d Cir. 1991)). "[A] state court's decision denying [a] petitioner's appeal does not moot a petition for *habeas* relief." Vazquez v. Bennett, No. 00 Civ. 3070, 2002 WL 619282, at *2 (S.D.N.Y. Apr. 17, 2002) (citing Diaz v. Henderson, 905 F.2d 652, 653 (2d Cir. 1990)). "Even where a habeas petitioner has demonstrated that his due process rights have been violated by a delay in the appellate process, we have not considered the delay, without more, to be a sufficient basis for release from

---

[3] At the time Hall's excessive delay claim was adjudicated by Judge Owen, the Appellate Division, First Department, had not decided Hall's direct appeal. Consequently, there has been no consideration, in the context of Hall's application for habeas corpus relief, of whether a due process violation, if any, arising from excessive appellate delay prejudiced the appeal, such that the remedy of relief from illegal custody is appropriate. Moreover, at the time of the September 2010 Order, the delay involved was less than five years, whereas by the time the Appellate Division had rendered its decision, the delay was five and one-half years. Accordingly, the Court has determined that a review of Hall's excessive delay claim is warranted here.

custody. . . . [rather] some showing of prejudice *to the appeal* is necessary for habeas relief; such a petitioner is not entitled to unconditional release on account of delay in his appeal unless he can demonstrate that the appellate delay caused substantial prejudice to the disposition of his appeal." Elcock, 947 F.2d at 1008 (citations and internal quotation marks omitted) (emphasis in original). "In defining substantial prejudice, we have stated that the petitioner must show a reasonable probability that, but for the delay, the result of the appeal would have been different." Id. (citation and internal quotation marks omitted).

To determine whether any delay has been excessive, the court must consider four factors: (1) was the delay excessive; (2) if so, is there an acceptable excuse for such delay; (3) did the petitioner assert his right to appeal; and (4) whether the petitioner was prejudiced by the delay. See Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972); see also Elcock, 947 F.2d at 1007 (Barker analysis applies to claims of excessive appellate delay). In applying the Barker factors, "no one factor is dispositive and all are to be considered together with the relevant circumstances." Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990) (citing Barker, 407 U.S. at 530-33, 92 S. Ct. at 291-93).

In this case, the five-and-one-half-year delay between the date of conviction and the date on which the state appellate court issued its decision is only slightly less than the six year delay found to be excessive in other Second Circuit cases. See Vazquez, 2002 WL 619282, at *2 (collecting cases involving delays of between six and thirteen years); Mathis, 937 F.2d 790 (six-year delay); Simmons, 898 F.2d 865 (six-year delay). At the same time, as Judge Owen noted, the delay in this case was a small fraction of the petitioner's sentence. Cf. Simmons v. Reynolds, 708 F. Supp. 505, 509 (E.D.N.Y. 1989) (six year delay on appeal found to violate right to due process where defendant had been sentenced to nine years' imprisonment). On

11

balance, therefore, although the delay in this case was long, the first Barker factor does not weigh in Hall's favor.

Turning to the second factor, it does not appear that an acceptable excuse exists for the delay in this case, even though some of the delay may have been caused by the petitioner. As noted earlier, the appeal was not perfected until February 2010, suggesting that the delay was due, at least in part, to inaction on the part of Hall's appellate counsel. The respondents argue that Hall himself was responsible for the delay because he failed to seek assignment of counsel and in forma pauperis relief promptly following his conviction. However, this assertion is doubtful because it does not take into account that leave to prosecute the direct appeal was not granted until November 6, 2006, just ten days before appellate counsel was assigned. Hence, it does not appear that Hall can be faulted for not obtaining counsel sooner. On the other hand, on more than one occasion Hall sought to have his assigned counsel replaced, proceedings which caused additional delay of the appeal process.[4] However, although Hall and his appellate counsel may have been partly responsible for the delay, as Judge Owen pointed out, the state court bears most of the blame because it has the power to supervise its attorneys and regulate the time within which briefs must be filed. See Vazquez, 2002 WL 619282, at *3. Accordingly, as

---

[4]In an affirmation dated May 15, 2007, appellate attorney Bonnie Goldberg, Esq. stated that Hall had applied for an order relieving the Legal Aid Society as counsel on appeal and that her office had not yet received the record on appeal, but that her office was doing "everything we can to obtain the record as quickly as possible." In an affidavit dated October 24, 2008, Kerry Elgarten, Esq. stated that he had been unable to perfect the appeal to date because "Mr. Hall has made a number of motions to this Court and currently has before this Court a motion claiming ineffective assistance of appellate counsel and apparently seeking new counsel. I will not proceed with the appeal unless and until that motion is resolved and new counsel is not assigned."

Judge Owen concluded, the second <u>Barker</u> factor weighs in Hall's favor but not heavily.

The third factor, whether Hall actively pursued his appeal, also weighs in Hall's favor. As Judge Owen noted, after his conviction, Hall made several <u>pro se</u> submissions, including a motion to set aside the verdict pursuant to C.P.L. § 330.30, a motion attacking his conviction collaterally, a petition for a writ of error <u>coram nobis</u> in which he claimed, <u>inter alia</u>, a violation of his rights due to excessive appellate delay, and an application for state habeas corpus relief. While these motions did not constitute a direct appeal of the conviction, they demonstrate Hall's intention to pursue his rights.

In connection with the fourth factor, whether Hall was prejudiced by the delay, Judge Owen, finding that the only prejudice Hall suffered was anxiety resulting from the delay, determined that this factor weighed only weakly in Hall's favor. Judge Owen concluded that, while the <u>Barker</u> factors weighed in Hall's favor, no violation of due process occurred, primarily because the delay was not as long as in other cases in which courts have found a violation of due process.

Since Judge Owen decided Hall's claim of excessive delay, the Appellate Division denied his appeal on the merits. As noted above, a state-court decision denying a petitioner's appeal does not moot a petition for habeas corpus relief. Thus, it must be determined whether the delay of his appeal caused substantial prejudice to the appeal itself such that Hall's confinement is constitutionally defective. If the delay prejudiced his appeal, the remedy Hall seeks through his application for habeas corpus relief, that is, a finding that his custody is unlawful, would be appropriate.

In this case, however, Hall has put forth no evidence showing a reasonable probability that, but for the delay, the result of the appeal would have been different. As a result, Hall has

not established that the appellate delay caused substantial prejudice to the disposition of his appeal. Therefore, Hall is not entitled to a writ of habeas corpus on this ground.

    2.    <u>C.P.L. § 330.30 Motion</u>

Hall contends that his conviction was obtained wrongfully because the trial court failed to include in the record the content of his motion to set aside the verdict, pursuant to C.P.L. § 330.30. As evidenced in the portion of the transcript of the sentencing proceeding set forth above, Hall's trial counsel presented to the court Hall's <u>pro se</u> affidavit in support of his motion. Hall's counsel offered to "summarize the points for the record" because Hall had brought only one copy of the affidavit. The trial court directed instead that the affidavit be copied and provided to the prosecution. After the prosecutors reviewed the document, they stated, in response to a query from the court, that they opposed the motion. The trial court then denied the motion. The content of the affidavit was not read aloud during the proceeding, although discussion was had concerning defense counsel's request for an adjournment, so that he might have an investigator attempt to interview a witness, referenced in Hall's motion, about whose existence Hall had learned recently. Hall concluded that, because the motion was not read aloud during the proceeding, it was not included in the record on appeal and that he thereby suffered prejudice.

Hall has presented this claim in numerous filings, including on direct appeal and in his multiple replies to the respondents' opposition to the instant application for habeas corpus relief. In his reply papers, for example, Hall asserts that the "direct appeal was knowingly considered on the basis of a 'defective and un-amended record' which was absent the 'existing' underlying C.P.L. § 330.30 motion [and] deliberately <u>de hors</u> the record." In connection with this claim, Hall cites New York Judiciary Law Section 295, which provides, in pertinent part, that "[e]ach

14

stenographer . . . must take full stenographic notes of the testimony and of all other proceedings in each cause tried or heard. Such stenographer shall take complete stenographic notes of each ruling or decision of the presiding judge . . . together with each and every exception taken to any such ruling, decision, remark or comment by or on behalf of any party to the action." N.Y. Jud. L. § 295.

The respondents contend that Hall's claim is without merit because his C.P.L. § 330.30 motion was included in the judgment roll and became a part of the appellate record by virtue of its filing during the sentencing proceeding. In addition, the respondents contend that much of the "substance [of Hall's § 330.30 motion] was incorporated into his appellate counsel's brief." Additionally, in an affirmation in response to Hall's motion in state court for coram nobis relief, his assigned appellate counsel stated that Hall's "motion appears to be predicated on the notion that appellate counsel is not in possession of C.P.L. § 330.30 motion papers dated October 7, 2005. Appellate counsel was, however, provided with those motion papers as part of the record on appeal."

To the extent that Hall is relying on N.Y. Jud. L. § 295, his argument is not a basis for the remedy he seeks because the violation of a state statute is not a basis for granting federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480 (1991)(explaining that a violation of state law "is no part of a federal court's habeas review of a state conviction"). Relief on the basis of a petition for habeas corpus is available to a state prisoner only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States," which the petitioner has not demonstrated. 28 U.S.C. § 2254(a).

Moreover, on its face, no merit exists to the petitioner's claim. Hall has made no showing that the absence of a stenographic record of the contents of his C.P.L. § 330.30 motion, as opposed to the proceeding at which it was presented and the rulings of the presiding judge, prejudiced him in his ability to appeal. On the contrary, the claims made in his post-trial motion were known to his appellate counsel and incorporated into the appellate brief. Moreover, those claims were made part of the appellate record and were reviewed by the Appellate Division and denied. Therefore, the petitioner is not entitled to habeas corpus relief on this ground of his Amended Petition.

### 3. Defective Grand Jury Proceeding

Claims of deficiency in state grand jury proceedings are not cognizable on federal habeas corpus review when, as here, a petit jury subsequently convicts the accused; that conviction renders harmless, beyond a reasonable doubt, any defect in the state grand jury proceedings concerning the charging decision. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). Accordingly, Hall's claim, that the grand jury erred when it indicted him based on incompetent evidence from "insufficient eyewitness corroboration" because the witness who testified was not present at the time of the incident in question, namely, the shooting of Ben-Jochannan, is not cognizable here because the petit jury found Hall guilty of first-degree murder, second-degree murder, attempted first-degree murder, attempted first-degree assault, two counts of first-degree robbery, second-degree robbery, second-degree criminal possession of a weapon, and third-degree criminal possession of a weapon.

### 4. Ineffective Assistance of Appellate Counsel

Hall contends that "assigned appellate counsel refused to assist and determined to omit the . . . state habeas corpus issues, and C.P.L. § 440.30 claims in favor of filing a sub-par, and

16

defective, untimely and factually misleading brief for defendant-appellant." As set forth in the Amended Petition, the claims raised in Hall's state habeas corpus petition were: "defective grand jury and indictment based on legally insufficient evidence to indict; prejudicial delay of direct appeal; denial of fundamental right to timely appeal; denial of due process; jurisdictional defect and incomplete record on appeal." The claims raised in Hall's C.P.L. § 440.30 motion, as set forth in his Amended Petition, were: "denial of due process at trial; insufficient evidence of guilt; failure to stenographically record C.P.L. § 330.30 motion for appellate review; prosecution use of known false testimony."

The respondents contend that Hall cannot show that his counsel failed to raise significant and obvious issues on appeal while pursuing issues that were "significantly weaker." See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). In addition, construing Hall's claim of ineffective assistance of counsel to allege a failure to present the claims raised in his pro se supplemental brief filed on direct appeal, the respondents maintain that many of these claims "overlapped with those his attorney did include" or were based "solely on Hall's lack of familiarity with the law and with appellate practice."[5] The respondents also deny Hall's allegation of excessive delay on the part of appellate counsel with respect to the filing of Hall's direct appeal.

In Strickland v. Washington, 466 U.S. 668, 669, 104 S. Ct. 2052 (1984), the Supreme Court established a two-part test to determine whether defense counsel's assistance was ineffective. First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." Id. at 688-89, 104 S. Ct. 2064-65.

---

[5]The claims raised by Hall in his pro se supplemental brief include those presented in his state habeas corpus petition and in his C.P.L. § 440.30 motion.

Second, the petitioner must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94, 104 S. Ct. at 2067-68. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. Although Strickland "was born in the context of ineffective assistance of trial counsel [its] two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." Aparicio, 269 F.3d at 95 (citation omitted).

When a claim is made that counsel has rendered ineffective assistance, a strong presumption exists that counsel's performance falls within the "wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. In a circumstance where appellate counsel is the subject of the ineffective assistance claim, it must be remembered that appellate counsel need not advance every argument, regardless of merit, urged by the appellant. See Evitts v. Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 835 (1985). When appellate counsel is faulted for failing to raise a particular claim on direct appeal, if that claim is not meritorious, there can be no merit to the claim that appellate counsel should have raised it.

Hall cannot demonstrate that his appellate counsel was constitutionally ineffective. As noted above, Hall raised twenty claims through his pro se supplemental brief on appeal, all of which were found by the Appellate Division to be unavailing. Hall has put forth no evidence to show that the Appellate Division's determination in this respect was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, since these claims are without bases, there can be no merit to the allegation that appellate counsel should have raised them. In addition, many of the claims raised by Hall in his pro se supplemental appellate brief, state

18

habeas corpus petition and C.P.L. § 440.30 motion are duplicative of those raised by appellate counsel, thus undermining Hall's contention that appellate counsel omitted them improperly. Furthermore, the Court has reviewed the appellate brief and reply brief prepared by appellate counsel and finds no basis for Hall's claim that appellate counsel's brief was "sub-par." In addition, as discussed earlier, while there was a delay in perfecting the appeal, and while some of this delay may have been attributable to appellate counsel, Hall contributed to the delay by repeatedly seeking to have counsel replaced. In addition, Hall has failed affirmatively to prove prejudice by showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Therefore, Hall's claim of ineffective assistance of appellate counsel is without merit; thus, he has not shown that he is entitled to habeas corpus relief on this ground.

## RECOMMENDATION

For the reasons set forth above, I recommend that the Amended Petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 2220, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will***

*preclude appellate review*. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      October 3, 2014

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Ralph Hall